## GUSSIE FOX V. DALLAS HOTEL COMPANY.

### No. 3101.  Decided April 19, 1922.

### (240 S. W., 517.)

**1.—Pleading—Settlement—Employers Liability Act.**

In an action for causing death, brought by widow and minor children, against a company which had assumed care and control of the elevators in a building owned by another and leased to a merchantile company by whom deceased was employed as a night watchman, in which employment he was killed through negligence of defendant in failing to keep the elevator in proper condition a plea of defendant alleging a release from liability by plaintiffs of the employer and an insurance company on payment of a judgment recovered against the latter on account of such death, is *held* to be that of a contractual liability under the Employer's Liability Act. (P. 470).

**2.—Employer's Liability—Recovery—Effect on Liability of Third Person.**

The Employer's Liability Act of 1913 authorized the employee to receive compensation for an injury under its provisions without depriving him of his right to maintain an action against a third person whose tort caused the injury. (P. 471).

**3.—Same.**

Under the original Employer's Liability Act (Act of April 16, 1913, Laws, 33d Leg., p. 429, ch. 179) and prior to the Amendment of 1917 (Act of March 28, 1917, Laws, 35th Leg., p. 269, ch. 103) where the employer became a subscriber under the act no cause of action existed against him, for actual damages as distinguished from exemplary, the liability being that of the insurance company. The liability was contractual and the employer was not a tort-feasor. A third party, a stranger to the contract, whose negligence had caused the injury or death could derive no benefit from the contract, and, if sued for liability for his own negligence in causing the injury could not plead the recovery by plaintiffs against the insurance company in defense or abatement of his liability. (Pp. 470-473).

**4.—Same—Cases Followed.**

Ætna Life Ins. Co. v. Parker & Co., 96 Texas, 287; Missouri Pac. Ry. Co. v. Jarrard, 65 Texas, 566; Cole v. State, 106 Texas, 472; City of Austin v. Johnson, 204 S. W., 1181; Southern Surety Co. v. Houston L. & P. Co., 203 S. W., 1115; Texas & P. Ry. Co. v. Archer, 203 S. W., 796, followed and approved. (P. 472).

**5.—Negligence—Elevator—Contract.**

One who by arrangement with another took over the duty of control and repair of the elevators in the latter's building became charged with the duty to maintain them in a reasonably safe condition for use, and liable for injury to one using them by its neglect so to do, though under no contractual relations to the person injured. (Pp. 473-474).

**6.—Charge—Submitting Distinct Issues.**

The statutes (Vernon's Sayles' Civ. Stats., arts. 1971, 1984A, 1985) make it the duty of the trial court (1) to submit all controverted issues of fact made by the pleadings, (2) to submit each issue distinctly and separately, avoiding all intermingling and, (3) to give such explanation and definition of legal terms as shall enable the jury to answer each issue. (P. 475).

**7.—Same—Contributory Negligence.**

Where the pleadings and evidence presented as defenses several groups of facts, either of which, if proven, would constitute a complete defense of contributory negligence to plaintiff's action, it was defendant's right to have the issue presented by each complete plea submitted separately to the jury. It was error to submit the issue of contributory negligence generally as a single issue; and also error to refuse defendant's requested instructions submitting each issue so presented separately. Failure to so request submission would have the effect only of consenting for the court to determine the issue (Moore v. Pierson, 100 Texas, 116); and this whether judgment is entered on a general or a special verdict (M. K. & T. Ry. Co. v. McGlamory, 89 Texas, 638). (Pp. 475, 476).

**8.—Evidence.**

Defendant corporation being charged with negligence in its undertaking to manage and keep in repair the elevators in a building belonging to another company, whereby an employee of a lessee of the latter was killed through defendant's default in such performance, there was no error in admitting in evidence proof that the same person was owner of nearly all the stock in both companies, in explanation of their relation and of defendant's undertaking. (P. 411).

Error to the Court of Appeals for the Seventh District in an appeal from Dallas County.

Mrs. Fox, for herself and two minor children, sued the Dallas Hotel Company for damages arising from the death of her husband through alleged negligence of defendant in failing to keep an elevator in repair. Plaintiff recovered a judgment, which, on defendant's appeal was reversed and remanded by the Court of Civil Appeals. Appellee, Mrs. Fox, obtained writ of error by reason of rulings as to the effect of the statute on employer's liability. The case was referred to the Commission of Appeals, Section A, but subsequently withdrawn therefrom and set for argument and disposition in the Supreme Court.

*Etheridge, McCormick & Bromberg,* for plaintiff in error.—It affirmatively appears from appellant's answer that whatever compensation was paid appellees was paid in discharge of a contractual liability arising, regardless of negligence, out of the Workmen's Compensation Law, and such payment afforded appellant no defense, either in whole or in part. Middleton v. Texas Power & Light Co., 108 Texas, 96; Mo. Pac. Ry. Co. v. Jarrard, 65 Texas, 560; Nashville, C. & St. L. R. Co. v. Miller, 120 Ga. 453; 47 S. E. 959; Newark Paving Co. v. Klotz, 91 Atl. 91; Jacowicz v. Delaware L. & W. R. Co., 92 Atl. 946; M. K. & T. Ry. Co. v. Flood, 79 S. W. 1106; M. K. & T. Ry. Co. v. Rains, 40 S. W. 635; H. & T. C. R. Co. v. Weaver, 41 S. W. 846; Tyler S. E. Ry. Co. v. Rasberry, 34 S. W. 794; I. & G. N. R. Co. v. Haddox, 81 S. W. 1036; Vernon's Sayles' Civ. Stat., Art. 5246qq; Aetna L. Ins. Co. v. Parker, 96 Texas, 287.

The defendant was not a party to the contract between the subscriber, Alexander Fox, deceased, the employe, and the association, nor does it, nor can it claim that such contract was made for its use and benefit. The defendant is in no wise in privity with the contract, and therefore what was done in pursuance of the contract is *res inter alios acta*. No liability existed against A. Harris & Co., the subscriber, and the liability of Fidelity & Casualty Co., the association, was purely contractual, and that liability was not founded upon nor had it any relation whatsoever to negligence. Middleton v. Texas Light & Power Co., 108 Texas 96. Such being the case, the decision of the Supreme Court, in T. & P. Ry. Co. v. Levi & Bro., 59 Tex. 674, is directly applicable.

There is no provision in the Act of 1913 that subrogates the association or anyone else, either in whole or in part, to any payment made by the association, in pursuance of its policy contract, to the employe of a subscriber, nor is there any provision of that Act that, by subrogation, divests the plaintiffs of their cause of action, either in whole or in part, and vests it in another.

Aside from the judicial legislation in this case, no such provision is found in the Act of 1913, and the fact that the Legislature in 1917 made special provision for such case is evidence that in the contemplation of that body the right decided by the Court of Civil Appeals in this case to exist, did not exist under the Act of 1913. Interstate Tel. & Tel. Co. v. Public Service Elec. Co., 90 Atl. 1062. The decision of the Court of Civil Appeals in this case subverts the common law and perverts the Act of 1913. Mo. Pac. Ry. Co. v. Jarrard, 65 Texas, 560, 566; Railway Co. v. Miller, 120 Ga. 453, 47 S. E. 959; City of Austin v. Johnson, 204 S. W., 1181; T. & P. Ry. Co. v. Archer, 203 S. W., 796; Southern Surety Co. v. Houston Lighting & Power Co., 203 S. W., 1115; Smale v. Wrought Washer Mfg. Co., 151 N. W. (Wis.) 803; Jacowicz v. Del. L. & W. R. Co., 92 Atl. (N. J.) 946; Newark Paving Co. v. Klotz, 91 Atl. (N. J.) 91; Lester v. Otis Elevator Co., 153 N. Y. Supp., 1058; Interstate Tel. & Tel. Co. v. Public Service Elec. Co., 90 Atl. (N. J.) 1062.

Such authorities from other jurisdictions as may be cited in support of the contrary contention are based upon statutes essentially different from the Texas Act of 1913.

Even under the Workman's Compensation Law as amended in 1917, section 6a, part 2, the acceptance and retention of the amount paid by the surety company would not afford Dallas Hotel Company a defense. Lancaster v. Hunter, 217 S. W. 765, 767 & 768.

Under the undisputed evidence appellant owed Fox the duty to exercise ordinary care to maintain the elevator in question in a reasonably safe condition for his use, and the court did not err in so instructing the jury. Continental Fruit Express v. Leas, 110 S. W.,

129; St. L. I. M. & S. Ry. Co. v. Bass, 140 S. W., 860; Heaven v. Pender, 11 L. R., Q. B. Div., 503; Connors v. Great Northern Elevator Co., 85 N. Y. Supp. 644; (Affirmed by Court of Appeals, 72 N. E. 1140); Higgins v. Western Union Tel. Co., 28 N. Y. Supp. 676; Coughtry v. Globe Woolen Co., 56 N. Y., 124; Priolo v. Southard Wrecking & Trucking Co., 198 N. Y., 528; Same case, 91 N. E., 275; Lisle v. Anderson, 159 Pac. (Okla.), 278.

The trial court instructed the jury that defendant owed to Alexander Fox the duty to exercise ordinary care to maintain the elevator in question in a reasonably safe condition for his use. The Court of Civil Appeals held that such charge was proper if the defendant "had bound itself to maintain and keep the elevator in question in a state of repair," but sustained defendant's second assignment complaining of said charge on the ground that it was a question for the jury whether the defendant had so bound itself, whereas as a matter of fact the evidence upon the issue is wholly without dispute. 33 Harvard Law Review, 376; Addison's Law of Contracts, 11th Ed. 447; People v. Dummer, 274 Ill., 637.

Where the agent assumes charge and control of the instrumentalities of the principal, under an agreement to keep, or for the purpose of keeping, them in a reasonably safe state of repair, and negligently fails to keep them in such a state of repair, and by reason thereof a third person is injured, he is liable for such injuries. Such liability arises independently of any contract and is imposed by law by reason of the relation of the agent to the situation. Orcutt v. Century Building Co., 201 Mo., 424: Osborne v. Morgan, 130 Mass., 102, 39 Am. Rep., 437; Ellis v. McNaughton, 76 Mich., 237, 15 Am. St. Rep., 308, 42 N. W., 1113; Greenberg v. Whitcomb Lumber Co., 90 Wis., 225, 28 L. R. A., 439, 48 Am. St. Rep., 911, 63 N. W., 93; Baird v. Shipman, 132 Ill., 16, 7 L. R. A., 128, 22 Am. St. Rep., 504, 23 N. E., 384; Lough v. John Davis & Co., 30 Wash., 204, 59 L. R. A., 802, 94 Am. St. Rep., 848, 70 Pac., 491.

The issue of contributory negligence is single and not multitudinous and the court did not err in submitting to the jury question, No. 4. Texas Grain & Elev. Co. v. Dyer, 184 S. W., 1049.

Appellant makes no attempt to show that the refusal of any issue made the basis of any of its said assignments was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Rule 62a, Harris' Court Rules, 55; Wells Fargo & Co. v. Benjamin, 165 S. W., 121.

The issues requested by appellant were all properly refused because the inquiries related to mere matters of fact bearing upon the controlling issues to be determined by the jury. Ft. W. & D. C. Ry. Co. v. Hapgood, 184 S. W., 1075, 1078.

The practice of submitting a multiplicity of questions to be answered and separated as upon special issues has been repeatedly con-

demned. "The question should be so framed as to invoke a finding upon fact issues, and a finding of merely evidential facts should never be required. Such a course invariably involves the danger of ambiguity and contradiction." Cushman v. Masterson, 64 S. W., 1031, 1033; San Antonio & A. P. Ry. Co. v. Stuart, 178 S. W., 17, 23; Frigid Fluid Co. v. Westheimer, 189 S. W., 334. The testimony showing that Adolphus Busch, who was the owner of the Busch Building, was also the majority owner of the capital stock of Dallas Hotel Company, was a pertinent fact, explanatory of the reason why defendant stationed its own engineers in the Busch Building to maintain and keep the elevators therein in a reasonably safe condition for use.

*A. P. Wozencraft, S. P. English, Louis H. Porter,* and *Murphy W. Townsend,* for defendant in error.—The pleadings certainly did not conclusively show that the suit and settlement were controlled solely by the workmen's compensation law, and the demurrer necessarily a "speaking demurrer" was improper and should not have been sustained.

Compensation received under the Workmen's Compensation Law is at least payment *pro tanto* on the damages sustained, and in a suit by the servant against a third party on account of the *very* injury for which compensation has been paid under the law, the suit being based upon the failure of the third party to perform the *very* non-delegable duty which rested upon the employer, the servant, if he can have any further recovery at all, can recover only for damages in excess of the compensation already received. Workmen's Compensation Law, Acts 1913, p. 429; Robertson v. Trammell, 83 S. W., 258, 265; Judd v. Walker, 138 S. W., 655, 666; A. T. & S. F. Ry. v. Classin, 134 S. W., 358, 362; El Paso & Southwestern Ry. Co. v. Darr, 93 S. W., 166, 171.

Where upon the question of whether defendant, a third party, had bound or obligated itself to perform any services in the maintenance of an elevator, the pleadings present a sharp issue and the evidence if not wholly insufficient to show any obligation, is at least of such character as to strongly indicate that defendant had not bound or obligated itself, it is error of the court in charging the jury to expressly assume that defendant owed a duty to exercise ordinary care to maintain the elevator in a reasonably safe condition. Art. 1971, Revised Statutes 1911, as amended, Acts 1913, page 113; Alexander & Kneeland v. Von Koehring, 77 S. W., 629, 630; Golden v. Patterson, 56 Texas, 628, 629; Rogers v. Broadnax, 24 Texas, 538, 542-543.

A servant is not privy to such a contract, if any, as indicated in the evidence in this case, whereby the master contracts with a third party to maintain an elevator, and the representatives of such de-

111 Tex.—30

ceased servant cannot recover in a suit brought directly against the third party based upon an alleged *failure* to perform such contract. House v. Houston Waterworks Co., 88 Texas, 233; Labadie v. Hawley, 61 Texas, 177; Eastin & Knox v. T. & P. Ry. Co., 99 Texas, 654, 659; Byrd v. English, 43 S. E., 417, 117 Ga., 191; Standard Oil Co. v. Murray, 57 C. C. A., 1; Roddy v. Missouri Pacific Ry. Co., 15 S. W., 1112; Talley v. Beever & Hindes, 78 S. W., 23, 25.

It is recognized, of course, that with some exceptions, not material here, every person, whether acting for himself or as an agent, is under a duty to every other person not to injure him by committing a negligent act or doing an act in a negligent way. But a person asserting that another is under a duty to do an affirmative act must show a special relationship or special circumstances creating or imposing such duty. The rule is that an agent is personally liable to a third person for doing something which he ought not to have done, but not for not doing something which he ought to have done. In the latter case the agent is liable only to his employer. Labadie v. Hawley, 61 Texas, 177, Eastin & Knox, v. Texas & P. Ry. Co., 99 Texas, 654 House v. Houston Water Works, 88 Texas, 233; 20 Ruling Case Law, p. 49.

In support of its proposition that it should not be held liable for its failure or omission to keep the elevator in repair, the defendant submits the following authorities: 31 Cyc., 1559; Dean v. Brock, 38 N. E. 829; Cramblitt v. Percival-Porter Co., 158 N. W., 541-545; Kelly v. C. & A. Ry. Co., 122 Fed., 286; Floyt v. Shenango Furnace Co., 186 Fed., 539; Kimbrough v. Boswell, 45 S. E., 977; McGinnis v. C. R. I. & P. R. Co., 98 S. W., 590-592; Murray v. Usher, 23 N. E., 564; Jewell v. Kansas City Bolt & Nut Co. 132 S. W., 703-711.

Where defendant has pleaded in defense and supported by competent evidence several distinct grounds of contributory negligence, it is error for the court to merge the several issues into one very general issue, but the several issues should be submitted distinctly and separately as required by law. Acts 1913, p. 113, Sec. 1; J. M. Guffey Petroleum Co. v. Dinwiddie, 168 S. W., 439, 442; Gordon Jones Construction Co. v. Lopez, 172 S. W., 987, 990; Shaw v. Garrison, 174 S. W., 942; S. W. T. & T. Co. v. Andrews, 169 S. W., 218; 223; I. & G. N. Ry. Co. v. Parke, 169 S. W., 397, 400.

The courts have frequently held that each party has an absolute legal right to have the facts upon which is based either a cause of action or defense so clearly and affirmatively grouped as to present to the jury the very matter upon which the party relies. M. K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Northern Texas Traction Co. v. Moberly, 109 S. W., 483, 484; M. K. & T. Ry. Co. of Texas v. Renfro, 83 S. W., 21, 22; Ft. Worth & D. C. Ry. Co. v. Alcorn, 178 S. W., 833, 836.

In a suit where Adolphus Busch is not shown to have any actual connection with the matters made a basis for the suit, it is prejudicial error for the court to permit plaintiff to show, over the objection of defendant, that practically all of defendant's capital stock is owned by the said Adolphus Busch. Lone Star Brewing Co. v. Voith, 84 S. W., 1100; Fell v. Kimble, 154 S. W., 1070, and authorities cited.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This was a suit by plaintiff in error, Mrs. Gussie Fox, for herself and as guardian of her two minor children, to recover of the defendant in error, Dallas Hotel Company, actual damages on account of injuries causing the death of Alexander Fox, the husband of Gussie Fox and the father of the minors.

Alexander Fox was a night watchman for A. Harris & Company, incorporated, doing a merchantile business at Dallas in the first five floors and basement of a building of sixteen stories, leased from Adolphus Busch. While using an hydraulic elevator, extending from the basement to the sidewalk, in the regular performance of his duties as a watchman, Fox was caught beneath the elevator and sustained injuries from which he died.

Adolphus Busch owned the Busch building and owned over four-fifths of the stock of the defendant in error, Dallas Hotel Company, a corporation, which owned and operated the Adolphus Hotel. The Hotel and the Busch building were united by a tunnel, for the purpose of transmitting power, light, heat and water from the power plant in the Hotel to the Busch building. The Busch building, above the basement and lower five stories, was used for offices. There were nine passenger elevators, operated by means of electric power, in the Busch building, four for the store of A. Harris & Co., and five for the offices. A freight elevator and a dumb waiter were also in the store, both being operated by electric power.

It was alleged by plaintiff in error that defendant in error had undertaken in behalf of A. Harris & Co., and had agreed with A. Harris & Co., for compensation received, to supervise all the elevators in the Busch building and to keep them in such repair as to be reasonably safe for the use of the employees of A. Harris & Co., knowing that they were to be used by said employees, including Alexander Fox; that defendant in error had the charge, management and control of the elevators; that Alexander Fox was using the hydraulic elevator in discharging his customary duties on the night of January 30, 1914, when the elevator became stuck, when about half way down the shaft, because of defendant in errors's negligence in permitting same to become out of repair and dangerous; that thereupon Aleander Fox undertook to ascertain the defect in the elevator, when it suddenly shot downward, catching and crushing his legs

and inflicting injuries from which he died, such injuries being the proximate result of the negligence of defendant in error in its failure to keep the elevator in a state of repair so as to be reasonably safe for use.

Defendant in error plead, among other defences, that plaintiff in error had recovered and collected a judgment against the Fidelity & Casualty Company of New York for $2804.21, in a suit brought by plaintiff in error, against said Company and A. Harris & Co., for the damages sustained by the widow and children of Alexander Fox from his death as the result of the injuries he had sustained on January 30, 1914, while engaged in the work of his employment by A. Harris & Co.; that in said suit a recovery was sought against A. Harris & Co. on allegations that the injuries to Fox were the proximate result of negligence on the part of A. Harris & Co. in failing to properly maintain the hydraulic elevator which inflicted said injuries, and in failing to furnish Fox a reasonably safe place to work and reasonably safe appliances with which to perform his duties; that a recovery was sought of the Fidelity & Casualty Company on allegations that it had become bound to pay plaintiff in error $2804.21 as the present value of the balance due of the compensation to which plaintiff in error had become entitled under the Employer's Liability Act, by reason of the Fidelity & Casualty Company having agreed with A. Harris & Co. to insure the payment of the compensation specified in the Act to injured employees and to the beneficiaries of deceased employees. Defendant in error further plead that in said suit final judgment was rendered that plaintiff in error take nothing by her suit against A. Harris & Co. and that, after said judgment, plaintiff in error had executed a release unto both A. Harris & Co. and the Fidelity & Casualty Company from all liability by reason of Fox's injuries and death in consideration of the payment of said judgment and certain weekly installments previously paid by the Fidelity & Casualty Company.

Defendant in error further properly plead that the injuries to Fox were proximately caused by his own contributory negligence in the following particulars: (1) That Fox in order to look under the elevator needlessly placed his body in a position where he would be injured if the elevator should descend; (2) that he failed to overcome the sticking by operating the elevator up and down; (3) that when the elevator stopped he failed to lock it in position; (4) that he went under the elevator without having locked it; and (5) that in working under the elevator he failed to get entirely in the pit.

To our minds, the uncontradicted evidence established that defendant in error had, prior to the injuries received by Fox, to subserve its own interests, placed engineers in active and actual charge and control of the elevators in the Busch building, whose duty it was

to repair same; and, that, such action was taken by defendant in error with the approval and acquiescence of A. Harris & Co. and with the understanding that A. Harris & Co. would make suitable contribution to the compensation of such engineers, though the amount of such contribution was not definitely determined until subsequent to the death of Fox.

There was sufficient evidence to raise a question of fact as to each of the distinct grounds of contributory negligence set up in the answer of defendant in error.

Plaintiff in error excepted to so much of the answer of defendant in error as plead, in bar of this suit, the previous suit and judgment and release between her and A. Harris & Co. and the Fidelity & Casualty Company, because it appeared from the answer that the sums paid to plaintiff in error were in discharge of a contractual liability arising under the Workmen's Compensation Law, and hence same afforded no defences to plaintiff in error's suit against defendant in error, in whole or in part. The district Court sustained this special exception.

The District Court refused a requested charge directing the jury to find for defendant in error on the ground that defendant in error owed no duty to maintain and repair the hydraulic elevator, and, instead gave a charge to the jury to the effect that defendant in error owed to Alexander Fox the duty to exercise ordinary care to maintain the elevator in question in a reasonably safe condition for his use.

In answer to special questions, the jury found that defendant in error negligently permitted the packing around the plunger of the hydraulic elevator to be too tight; that such negligence occasioned the death of Alexander Fox; that in his conduct in, around, and about the elevator, or its shaft, prior to or at the time of the injury, Alexander Fox was not guilty of contributory negligence; and, that $3000 was the amount of actual damages sustained by the widow and by each child.

Objection was made to the question submitted to the jury with regard to Fox's contributory negligence because it did not present separately each of the grounds of contributory negligence which were plead and proven, and special charges were requested by defendant in error asking a separate submission of the distinct matters relied on as constituting contributory negligence on the part of Fox. The objection was overruled and the special charges were refused.

On the jury's special verdict, judgment was rendered by the District Court that plaintiff in error recover $9000 of defendant in error.

On appeal, the Amarillo Court of Civil Appeals reversed the judgment, holding: (1), that there was error in sustaining plaintiff in error's special exception to the plea by defendant in error of the suit and judgment and release as between plaintiff in error and A.

Harris & Co. and the Fidelity & Casualty Company, because the same were conclusive against plaintiff in error's right to recover anything of defendant in error; (2), that there was error in the charge that defendant in error owed the duty to Fox to exercise ordinary care to maintain the elevator in a reasonably safe condition for his use, because such duty depended on whether defendant in error had agreed with A. Harris & Co. to keep the elevator in repair and the evidence as to whether such an agreement was made was conflicting; and (3), that there was error in the court's submission of the issues arising under the pleas of contributory negligence and in the refusal of the defendant in error's requested special charges on contributory negligence.

We agree with the Court of Civil Appeals that the settlement between plaintiff in error and A. Harris & Co. and the Fidelity & Casualty Company, according to the averments of defendant in error's answer, was under the Employer's Liability Act. The first question we will determine is whether the settlement and the judgment on which it was based precluded a recovery herein by plaintiff in error.

Under the 1917 amendment to the Employer's Liability Act it is expressly provided that where the injury for which compensation is payable arose under circumstances creating a liability against some person other than the subscribing employer, the employee may, at his option, proceed against either the third person or the insurer, (the association), and if he elects to proceed against the third person he shall be denied compensation under the Act; and, that if he claims compensation under the Act, then the insurer shall be subrogated to the rights of the injured employee, provided, that in case the insurer recovers of the third person a sum greater than was paid by the insurer, besides the reasonable cost of such recovery, the excess shall go to the injured employee or his beneficiaries.

The original 1913 Act, under which plaintiff in error effected a settlement as plead by defendant in error, dealt entirely with the liability of the employer to the employee or his beneficiaries, save in section 6 of Part II of the Act, which section obviously applied to an entirely different state of facts than those of this case.

The employer who did not become a subscriber under the Act continued liable for his negligence, being deprived of certain common law defences. The employer, however, who did become a subscriber was no longer liable for injury or resulting death to his employee, except for exemplary damages for death occasioned by the wilful act or omission or gross negligence of the employer.

So far as actual damages were concerned, A. Harris & Co. having become a "subscriber" under the Act, neither Fox nor his beneficiaries had any cause of action against A. Harris & Co. As a subscribing employer, A. Harris & Co., inc., was freed of all duties save

with respect to acts and omissions which would have warranted the
imposition of exemplary damages, and such acts or omissions in no
wise enter into the facts of this case. It is perfectly plain, therefore,
that A. Harris & Co. cannot be regarded as a tort feasor liable to
plaintiff in error for damages on account of the injuries resulting in
Fox's death. Plaintiff in error was required to look alone to the
Fidelity & Casualty Company, which had, by contract, insured the
payment of the compensation provided by the Act. By its policy,
the Fidelity & Casualty Company had promised and agreed to make
the payments specified in the Act to A. Harris & Co.'s injured em-
ployees or to their beneficiaries. The judgment collected by plain-
tiff in error, together with previous weekly payments, discharged
the contract obligation of the Fidelity & Casualty Company. To that
contract, defendant in error was a stranger and it certainly can de-
rive no benefit from the contract by its negligence resulting in the
death of Fox, though it be liable therefor in actual damages, under
another statute.

In Boyd's Workmen's Compensation, section 67, it is stated: ''The
new obligation of the employer to his employee is rather a wage obli-
gation in the nature of an undertaking thrust upon the employer,
as a part of the contract of employment, to become party to an in-
surance policy created by law and to be entered into as additional
consideration for the services rendered by the employes. The ob-
ligation falls within the domain of contract and this involves a sphere
of constitutional law pertaining to the subject of the regulation of
contracts.''

The 1913 Act nowhere provided for the release of a third person
from liability to an injured employee or his beneficiaries, because of
a settlement under the Act, nor did it declare, save in the above men-
tioned section 6, in Part II, any subrogation of the employer or in-
surer to the rights of the injured party or of his beneficiaries against
the third party. The Act did not, as did the statute of many states
and as does the amendment of 1917, require the injured employee
or his beneficiaries to elect whether to proceed against the insurer
for the compensation allowed by the Act or against a third person
for damages from his tort. Having found that compensation under
the Act is recoverable through enforcement of a contractual obli-
gation, we cannot conclude, in the absence of any language in the
Act declaratory of such intent, that collection of the compensation
specified in the Act can prevent the recovery, from a third person,
by the injured employee or his beneficiaries, of damages for negli-
gence proximately causing the injury.

Liability Acts in the form of the 1913 Act have often been con-
strued as authorizing an employee to receive compensation for an
injury under the provisions of the Acts, without depriving him of
the right to maintain an action for damages against a third person

whose tort caused the injury. Mercer v. Ott, Com'r., 78 W. Va., 629, 89 S. E., 952; Smale v. Wrought Washer Mfg. Co., 160 Wis., 331, 151 N. W., 803; Bryant v. Fissell, 84 N. J. Law, 72, 86 Atl., 458; Newark Paving Co. v. Klotz, 85 N. J. Law, 431, 91 Atl., 91; Jacowicz v. D. L. & W. R. R. Co., 87 N. J. Law, 273, 92 Atl., 946, Ann. Cas. 1916B, 1222.

We think our construction effectuates the principal purpose of the 1913 Act, which was to shield the employee, to a restricted extent, from the consequences of injuries received in the course of his employment, by insuring the payment of weekly indemnities for either the period of disability or a very limited time. The protection furnished by the Act is closely analogous to that provided by accident insurance, where the insurance company is refused subrogation to the claim of the insured against a third person whose negligence occasions the injury for which compensation is collected of the company. Aetna Life Ins. Co. v. Parker & Co., 96 Texas, 287, 72 S. W., 168, 580, 621.

A similar question to that under consideration was presented by the contention of a railway company that it could not be held liable for time lost by a passenger from injuries sustained in a wreck occasioned by the company's negligence, where, under a contract with the passenger's employer, or by grace of the employer, the passenger's regular wages were not discontinued. The contention was disposed of by the decision that "if the continuance of his wages was a provision of his contract, or a grace of his employers, the defendant was not entitled to the benefit of either." Missouri P. Ry. Co. v. Jarrard, 65 Texas, 566.

Had the Legislature intended to entirely relieve strangers to the Liability Act from the payment of actual damages arising from their torts, recoverable under another statute, through settlements under the Act, it cannot be doubted that such intent would have been expressly and plainly declared. Where the Legislature has not seen fit to extinguish a liability created by statute by either express repeal or by any reasonable implication from the language of a subsequent Act, it is plainly our duty to enforce the liability. Cole v. State, 106 Texas, 472, 170 S. W., 1036.

The Austin, Beaumont, and Dallas Courts of Civil Appeals have decided that the receipt of compensation under the 1913 Act did not prevent an injured employee from maintaining an action against a third person, for actual damages arising from the injury as the proximate result of negligence of the third person, nor subrogate the insurer to the injured employee's claim against the third person. City of Austin v. Johnson, 204 S. W., 1181; Southern Surety Co. v. Houston Lighting & Power Co., 203 S. W., 1115; Texas & P. Ry. Co. v. Archer, 203 S. W., 796. Writs of error, now pending, were

granted in the two first mentioned cases because of the importance of the question determined.

Upon defendant in error taking over the control and repair of the elevators, to promote its own interests, it became charged with the duty, declared in the instructions of the trial court, to exercise ordinary care to maintain the elevators in a condition of reasonable safety for use. This duty to one using the elevators depended in no wise on any contractual obligation in favor of the user from defendant in error. The duty is grounded on the obligation to exercise ordinary care in an undertaking which cannot otherwise be carried on without endangering the lives and limbs of others. An elevator, such as that in which Fox was injured, is a structure designed and maintained for use by human beings. Death or bodily harm to a fellow being is the natural consequence of failure to keep the elevator in repair. Having brought under its control a mechanical appliance, which was, or should have been, known to be attended by grave risks defendant in error was under the specific, legal duty to exercise ordinary care to protect those for whose use the appliance was provided against the risk it foresaw or should have forseen.

Plaintiff in error's cause of action is not for breach of the contract between defendant in error and A. Harris & Co., but is for damages sustained from defendant in error's tort. Osborne v. Morgan, 130 Mass. 104. Defendant in error cannot be excused for negligently killing Alexander Fox, because it had a contract with A. Harris & Co. under which it had agreed to perform what might have been one of A. Harris & Co.'s non-delegable duties to Fox. The duty not to negligently do anything to the hurt of Alexander Fox was imposed on defendant in error not as agent of A. Harris & Co. but as a corporation responsible for its own tort. Kenney v. Lane, 9 Texas Civ. App., 160, 36 S. W., 1063; Ry. Co. v. Bass, 140 S. W., 861; Armstrong Packing Co. v. Clem, 151 S. W., 576; 2 C. J., 498; 5 Thompson Neg., sec. 5771; Tippecanoe Loan & T. Co. v. Lester, 180 Ind., 357, 101 N. E., 915, L. R. A., 1915E, 735; Southern Ry. Co. v. Reynolds, 126 Ga., 659, 660, 55 S. E., 1039; Morey v. Shenango Furnace Co., 112 Minn., 530, 127 N. W., 1134; Ellis v. McNaughton, 76 Mich., 240, 242, 42 N. W., 1113; Wells v. Hansen, 97 Kan., 305, 154 Pac., 1033, L. R. A., 1916F, 569; Note, 25 L. R. A. (N. S.) 343.

In Baird v. Shipman, 132 Ill., 18, 7 L. R. A., 128, 22 Am. St., 504, the Supreme Court of Illinois fully concurred in the following declaration by the Presiding Judge of the Appellate Court for the First District, viz: "An agent is liable to his principal only for mere breach of his contract with his principal. He must have due regard to the rights and safety of third persons. He can not, in all cases, find shelter behind his principal. If, in the course of his

agency, he is entrusted with the operation of a dangerous machine, to guard himself from personal liability he must use proper care in its management and supervision, so that others in the use of ordinary care will not suffer in life, limb, or property. (Suydam v. Moore, 8 Barb., 358; Phelps v. Wait, 30 N. Y., 78.) It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished. by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable."

In approving the doctrine of Baird v. Shipman, supra, the Supreme Court of Washington said: "There is still another class of cases which hold what seems to us to be the correct doctrine, viz., that the obligation, whether for misfeasance or nonfeasance, does not rest in contract at all, but is a common-law obligation devolving upon every responsible person to so use that which he controls as not to injure another, whether he is in the operation of his own property as principal or in the operation of the property of another as agent." Lough v. John Davis & Co., 30 Wash., 213.

The Supreme Court of Ohio in stating the rule of non-liability of agents for non-feasance, which was quoted with approval in Judge Stayton's opinion in Labadie v. Hawley, 61 Texas, 179, 48 Am., 278, was careful to say that it was only "*in general*" that the rule applied.

An unmanageable horse endangers the safety of those in proximity to him, no more certainly than does an elevator out of repair bring danger to those using it. It was claimed that an agent, knowing a horse of his principal to be unmanageable, could not be made to respond in damages to a pedestrian, run over by the horse while driven along a street by the agent in the conduct of the principal's business. In rejecting the claim, the Supreme Court of Massachusetts said: "One who actively participates in a negligent use of property, with full knowledge of the danger to third persons, is himself negligent, and he cannot avoid liability by showing that he was assisting the negligent owner as his servant or agent." Corliss v. Keown, 207 Mass., 151, 93 N. E., 144.

The general principal underlying our decision is laid down in Vol. 1, Street's Foundations of Legal Liability, page 92, as follows: "In every situation where a man undertakes to act or to pursue a particular course he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another just as

if he had bound himself by an obligatory promise to exercise the required degree of care.'' See also Continental Fruit Express v. Leas, 50 Texas Civ. App., 584, 110 S. W., 132.

The trial court disregarded the mandatory provisions of articles 1971, 1984A, and 1985 Vernon's Sayles' Texas Civil Statutes, in the charges given and refused, in submitting the issues of contributory negligence raised by the pleadings of defendant in error. For that reason, no other proper judgment could have been rendered by the Court of Civil Appeals than to reverse the judgment of the trial court and to remand the case for a new trial.

The statutes make it the duty of the court in trials by jury: first, to submit *all* the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue.

Each group of facts plead by defendant in error, which, standing alone, would, if proven, constitute a complete defence to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she plead and proved. The court submitted separately, as the statute required, each group of facts relied on by plaintiff in error, under her pleadings and the evidence, to constitute negligence on the part of defendant in error. The court, over the objection of defendant in error, refused to submit separately each group of facts relied on by defendant in error, under its pleadings and the evidence, to constitute contributory negligence on the part of Alexander Fox.

In submitting either negligence or contributory negligence, special issues should be restricted to specific acts of negligence alleged and proven. It was no less improper, to submit the general question of Fox's contributory negligence, over objection, without regard to the specific acts of negligence plead and supported by proof, than it would have been to have submitted the general question of defendant in error's negligence, without regard to the specific acts of negligence set out in plaintiff in error's petition.

So stringent was the old rule, that no special verdict was allowed to stand which did not dispose of all issues of fact. Cole v. Crawford, 69 Texas, 126, 5 S. W., 646. No change has been made in the right of a party plaintiff or defendant to have *all* fact issues submitted and determined. The change is that the party who fails to make written request for the submission of an issue is treated as consenting for the court to determine the issue. Moore v. Pierson, 100 Texas, 116, 117, 94 S. W., 1132.

After erring by intermingling in one question all the contributory negligence issues by asking whether Fox was "guilty of contributory negligence in his conduct in, around, or about the elevator, or the shaft thereof, prior to or at the time he was injured," the court further erred in refusing certain special charges, asked by defendant in error, which might have rendered the first error harmless. Each of these charges directed the jury to answer the general question against plaintiff in error if the evidence established a specified group of facts constituting a defence to plaintiff in error's suit, under the law of contributory negligence. These charges contained explanations which were necessary to enable the jury to properly answer the court's comprehensive question, and hence were required by the express terms of the statute.

Defendant in error not only objected to the single question submitted, covering all contributory negligence issues, but requested in writing that several contributory negligence issues be separately submitted. The court erroneously refused to submit these issues, as the Court of Civil Appeals rightly determined.

The right of a party plaintiff or defendant to have all fact issues submitted to, and determined by, a jury, which he has plead and proven, depends in no wise on whether judgment is to be entered on a special or general verdict. The language of the statute is too plain to admit of doubt on this point. Hence, the cases settling the rule where general charges are given settle it where special issues are submitted.

The rule, no matter what the form of the charge, as applied to the plea of contributory negligence, is stated by judge Denman, with clearness and precision, in M. K. & T. Ry. Co. v. McGlamory, 89 Texas, 638, 35 S. W., 1054, as follows: "Defendants had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of any specified group of facts which if true would in law establish such plea . . . The rule does not permit a litigant to annoy the court or confuse the jury by special charges about the weight of, or giving undue prominence to, each circumstance introduced tending to support his cause of action or defense, but requires him at his peril to present in such special charge for the consideration of the jury a fact or group of facts, which, if found by them from the evidence to be true, establishes in law some material issue presented by the pleading."

The rule is reaffirmed in St. Louis & S. W. Ry. Co. v. Casseday, 92 Texas, 528, 50 S. W., 125; Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Texas, 417, 65 S. W., 765; St. Louis S. W. Ry. Co. of Texas v. Hall, 98 Texas, 481, 859 S. W., 786; Wichita Falls Traction Co. v. Adams, 107 Texas, 614, 183 S. W., 155; Ft. Worth & D. C. Ry. Co. v. Morrow, 235 S. W., 667; and, Ft. Worth & D. C. Ry. Co. v. Hawley, 235 S. W., 663.

We do not mean to say that all the special charges requested by defendant in error on contributory negligence should have been given. We do hold that reversible error was committed in refusing charges entitled to be given under the stated rules, which should control another trial.

Defendant in error will be entitled, on another trial, to have the jury determine whether its negligence, if any, was the proximate cause of Fox's injury.

The evidence as to Busch's ownership of stock of defendant in error was not immaterial and no error was committed by the district court in its admission.

The assignments of defendant in error in the Court of Civil Appeals not herein mentioned were correctly determined by that Court.

Since the Court of Civil Appeals entered the judgment which should have been rendered, it is ordered that its judgment reversing the judgment of the District Court and remanding the cause for a new trial be affirmed, but, the district court will be governed by this opinion on the new trial.

*Reversal and remand affirmed with instructions.*